Roy B. Woodhull, Appellee, v. A. L. Trainor, Appellant.

No. 41814.

April 4, 1933.

E. L. Carroll, for appellant.

E. F. McEniry, for appellee.

DONEGAN, J.—The plaintiff, Roy B. Woodhull, was the owner of premises on which there was a two-story brick and tile building with basement, and known as No. 122 North Elm street, Creston, Iowa. Under date of the 6th day of October, 1930, plaintiff, by a written lease, rented one-half of the first floor, one-half of the basement, and all of the second story of this two-story building, and also a brick and tile building on the rear of the lot, to the defendant for the period of three years commencing October 1, 1930, and ending October 1, 1933, with option to lessee to extend said lease for two years on the expiration thereof. By the terms of the lease defendant was given possession of all of the leased premises on the execution of the lease, with the exception of the second story of the building, of which possession was to be given on March 1, 1931, and agreed to pay $25 per month from October 1, 1930, to March 1, 1931, and $70 per month after March 1, 1931, to the end of the lease. The leased premises were to be used for the purpose of dry-cleaning business and residence purposes. The defendant entered into the possession of the leased premises, with the exception of the second story of said building, on or about the date of the execution of the lease, and installed certain dry-cleaning machinery and equipment therein. The one-half of the first floor leased to the defendant and occupied by him with his dry-cleaning business was not separated by any partition from the remaining one-half of such room, which was occupied by the plaintiff who operated a shoe repairing

business therein. Some time after the defendant had begun to occupy and use said one-half of the first floor with his dry-cleaning business, difficulties seem to have arisen between him and the plaintiff. Some time in the month of February, 1931, the defendant prepared to lease other premises and move his property from the premises leased from plaintiff, and on the 24th day of February, 1931, the plaintiff commenced this action.

In his petition the plaintiff alleged the execution of the lease, that defendant entered into possession thereof and installed machinery and equipment thereon, and that the defendant was about to remove such machinery and equipment from said premises, and asked that defendant be enjoined from removing or attempting to remove the said property from leased premises during the life of the lease and that plaintiff's lien be established on all said property. Defendant by an answer and amendment thereto admitted the execution of the lease and the occupation of the premises, but denied the other allegations of the petition. Further answering, defendant alleged that the lease did not contain the real agreement between the parties, that before said lease was executed plaintiff was having difficulty in securing a permit from the city for the operation of a dry-cleaning business, that plaintiff induced defendant to sign said lease by stating that it would be for temporary purposes only in order to secure a permit from the city to operate said business, and that after such permit should be secured a new lease would be executed containing other and different provisions; that among such provisions was to be a provision for the erection of a partition in said building or the installation of a dust remover, or a ten-year term or the purchase of the building; that defendant relied upon the promises of plaintiff; that after such permit was obtained the plaintiff refused to execute such other lease and made conditions so intolerable that defendant was unable to carry on his business successfully; that plaintiff made no effort to erect a partition or to keep down the dust in the room; and that plaintiff and his employees carelessly and negligently brushed against clothing that had been cleaned and necessitated the recleaning thereof, and made it impossible for defendant to continue the occupancy of the premises and the operation of said dry-cleaning business thereon.

In his original petition plaintiff admits that no rent was due at the time of filing such petition, but in an amendment filed on January 27, 1932, plaintiff added a second division to his petition

and asked for judgment for $420 rent from March 1st to January, 1932. To this amendment to petition defendant filed an answer in which he repleads the defenses set up in his original answer and amendment.

Trial was had to the court. Thereafter, the court filed an opinion and a decree finding that the defendant had failed to establish any binding agreement as to the execution of another lease; that the lease sued on was valid; that plaintiff was entitled to the rent in the amount asked; that his landlord's lien be established upon the property of defendant in said premises; and that defendant be enjoined from removing said property therefrom. From this decree the defendant appeals.

Appellant complains of the findings and decree of the trial court in holding that the oral evidence introduced was incompetent; that there was no collateral agreement to make another lease; and that there was no fraud on the part of appellee.

Appellant testified as a witness for himself. In his testimony he stated that, while negotiations for the lease were in progress, the appellee met with opposition on the part of the city council to granting a permit for a dry-cleaning establishment; that appellee thereupon proposed to appellant that they execute the lease in question for the purpose of having something to present to the city council, and for the purpose of furnishing a ground for a suit against the city in case the permit was not granted; that it was understood and agreed that the said lease was to be temporary only and that after the permit should be secured a new lease for a term of ten years would be made, and appellant could have any kind of a lease he wanted; that the appellee told him that the thing to do at the time was to sign the lease they had drawn up and change it later; that appellee said he would put in a partition or dust remover or anything to make the dry-cleaning business successful. Appellant further testified that after the permit had been granted appellant suggested making a new lease and the appellee refused to do so. Appellant further testified that, because of the dust which came from the shoe repairing business conducted by appellee in the same room, the noise made by the shoe repairing machinery, and the interference by appellee and his help with the operation of appellant's business, it became impossible for him to continue to operate his business at a profit upon the said premises.

Appellant's wife also testified as a witness and stated that she

heard some of the conversation before the lease was executed, in regard to the permit and a new lease to be executed for ten years, after the permit was obtained. Both appellant and his wife claimed that his business suffered from the dust from the shoe repairing business conducted by appellee, and that appellee and his help, in going to the toilet and furnace in the basement, brushed dust and dirt from their hands and aprons upon the clothes which had been cleaned and pressed and thus made it necessary for appellant to reclean and repress the garments, and that this caused dissatisfaction on the part of his customers because of delay in delivery. Both appellant and his wife testified that they would not say that the appellee and his help intentionally dirtied these clothes or intentionally did anything else to interfere with the operation of the dry-cleaning business.

One Blodgett, who was employed by appellee, was also called as a witness for appellant. This witness was also one of the witnesses to the lease, and he testified that he could not say that he heard anything said about a ten-year lease, but that he did hear some talk that the lease could be changed later to the satisfaction of the parties. He said he understood the lease was a three-to-five-year contract, and that the rental was agreed upon and that everything was fine; that they also talked that if they got their permit if it was mutually agreeable together they would make a new contract; otherwise this contract was to stand.

Appellee as a witness denied that there was any agreement in regard to a ten-year lease, and both appellee and appellant's witness Blodgett, testified that they did not touch or dirty the clothes which had been cleaned and pressed, and that there was no reason why these clothes should be hung in such a way as to interfere with the entrance to the basement.

In the answer and amendment thereto filed by appellant, in the testimony of both appellant and his wife, and in the argument presented to this court, it appears to be appellant's contention that the lease was entered into for the purpose of forcing the city to issue a permit and without any intention that such lease should ever be in force. If this were true, there might be a serious question as to the appellant's standing and right to relief in a court of equity. However, we do not deem it necessary to consider this phase of the case, because a more satisfactory result can be reached by deciding the whole case on its merits.

The record shows that the lease in question was drawn up upon a printed form by an attorney. In addition to the printed form, however, several other matters were added to the lease in typewriting. Among the additions thus made was a provision giving the appellant the option to renew the lease for two years at the expiration of the three-year period; a provision in regard to water rentals; a provision in regard to the heating of the building; a provision in regard to an option to appellant to purchase; and a provision that the possession of the second story of the brick and tile building was not to be given to appellant until March 1st, that the rent until that time would be $25 per month, and that thereafter it would be $70 per month. The lease appears to be regular in every way and embodied terms which had been discussed by the parties. Moreover, it appears that the appellant had come to Creston in September prior to the execution of the lease; that he had never lived in Creston before that time; that the dry-cleaning business which he planned to operate was a new venture by a stranger in a strange city, and it does not seem probable that he would have desired to be tied up with a ten-year lease without any knowledge or assurance as to how the business might succeed. As we view the evidence in its entirety, leaving out of consideration the appellee's objections as to the competency of much that was offered, we do not think there was a sufficient showing of a collateral agreement for a ten-year lease, or of any fraud on the part of the appellee. The evidence was all taken subject to objections and, in view of our finding, we do not consider it necessary to enter into a discussion of the holdings of the trial court in regard to the competency of this evidence.

As far as the acts of the appellee and his help are concerned, which it is claimed interfered with appellant's business and made it impossible for him to operate it on the leased premises, it appears quite clearly from the evidence of the appellant and his wife that such interference, if any, was so trivial that very little was said about it. Both appellant and his wife testified that they got along very well with the appellee, and that there was practically no disagreement except in regard to granting a new lease.

Appellant also complains that the dust arising from the shoe repairing business was such that it was impossible to continue operating his dry-cleaning business in the same room unless a partition was installed or unless appellee installed dust removers on his shoe repairing machinery. It appears that appellee refused to allow a

1336

partition to be installed. It further appears that the shoe repairing machinery operated by the appellee has dust removers connected therewith, which, however, do not remove all the dust, and that there was some talk between the appellant and the appellee in regard to the appellee procuring new dust removers or improved machinery with dust removers attached thereto. Complaint is also made that the noise from the shoe repairing machinery interfered with appellant taking orders and talking to customers over the telephone. Appellee admits that some dust escapes from his shoe repairing machinery and that he has considered installing new machinery, and that when in operation the machinery makes considerable noise. It appears without dispute that the shoe repairing business has been conducted by appellee in the room in question for several years; that all of the conditions complained of existed before the lease was executed; and that the appellant did conduct his dry-cleaning establishment in this room with fairly good success under the conditions as they existed. We do not find sufficient evidence to show that the conditions existing were such as to make it impossible for the appellant to conduct his dry-cleaning business in the leased premises. The execution of the lease was admitted by appellant. By its terms the appellee was entitled to the lien and the rents asked in his petition and amendment thereto. Appellant sought to invalidate such lease by the affirmative defenses set up in his answer and amendment. The burden was on appellant to establish these affirmative defenses. This burden the appellant has failed to sustain. The decree of the trial court will, therefore, be affirmed.

All Justices concur.